Page number 21-1139 et al. Waterkeepers Chesapeake et al. Petitioners v. Federal Energy Regulatory Commission. Mr. Hughes for the Petitioners. Mr. Ettinger for the Respondents. Mr. May for the Intervenors. Maryland Department of the Environment. Mr. DeBruin for the Intervenors. Constellation Energy Generation LLC. Mr. Beese for the Respondents. Intervenors Department of the Interior. Good morning, Mr. Counsel. Mr. Hughes, please proceed when you're ready. James Hughes for the Petitioners. Waterkeepers Chesapeake. North Susquehanna Riverkeeper Association. Four Rivers and the Chesapeake Bay Foundation. I'd like to reserve three minutes for rebuttal. Did you raise the podium as high as it'll go? Okay, got it. Just make it short. This case is about the health and future of the Chesapeake Bay and the Susquehanna River. Federal Energy Regulatory Commission has issued a new 50-year license to the Conowingo Dam. And that license does not include the water quality certification that Maryland issues to the dam or any of the important requirements that Maryland established as necessary to protect the dam, excuse me, to protect the bay and river over the next 50 years. FERC violated the Clean Water Act by issuing the license without the certification. It also acted arbitrarily and violated the Federal Power Act and the National Environmental Policy Act by failing to give adequate consideration to the harms that its decision will cause at the place. And I'd like to address those issues now. The Clean Water Act provides that no license shall be granted unless a water quality certification has been obtained, in which case it must be included as a condition on the license. Or, water quality certification has been waived in the specific way that Section 401 of the Act applies. That waive is if the state must have failed or refused to act on the certification. FERC, the Federal Energy Regulatory Commission, I'll call it FERC because that's all right, FERC agrees that Maryland acted on the certification. It acted in 2018 by granting certification. At that point, the state is positive. Because Maryland neither failed nor refused to act on the dam owner's certification request, it did not waive certification. Does that trigger at the moment that the certification is made? Is it a gotcha game? I mean, suppose you have a situation in which there was just a mistake and the state administrative body realizes it sometime later, several weeks later, and says, oops, there was a mistake. There is a process to that. First, there's an administrative process at the state level. So, the state can and often does reconsider its decision in the rehearing process. And what about that? So, there's a state administrative process. There's also state judicial review. So, there's things that can happen in the state's own processes that result in annulling or vacating a certification that was issued. You don't dispute the proposition that those things count, even though the certification was granted. Oh, no, I agree. Those things count. How does that? How do you square that with a statutory test? Well, once the certification has been vacated or withdrawn by the state, it doesn't exist anymore. But why does the state get to do that? I mean, the state gets to decide what happens with the certification. The state gets to issue the certification, decide what goes into the certification, and it can withdraw the certification or vacate it under its own process. What FERC has to do, FERC's job is issuing the license. And what the statute says is FERC can't issue the license unless certification has been waived in that very specific way. So, that's the statutory context. So, in the circumstance in which a certification is issued, but then it goes through state administrative review, and the decision is made by the state to, what you called it, withdrawing the certification. Or vacate it, as the state did in the FTL case in Maine. Or vacate it. I'm not sure what the, they may use different words, but essentially make it disappear. And that's okay under the statute because, what are the words that say that that's okay? Well, the Clean Water Act simply doesn't address that. The Clean Water Act is talking about FERC's authority and the limitations on that authority. It doesn't talk about what the state can do with the certification. And then, if that's true, then why can't the state do what it did here? Well, there are two reasons for that. One is, under the Clean Water Act, a state that wants to change its mind and withdraw certification, assuming that's what the settlement does, get into that benefit or force it to do that, but if that's what it wants to do, it still hasn't failed or refused to act on the certification. Congress is very specific that that's the only kind of waiver that gives FERC authority and license. But why is, I'm still, I'm just missing something, so forgive me. Why can't everything you just say equally be said about the situation in which the state itself decides to withdraw because the certification doesn't survive administrative review? It's still a decision by the state to take back something that it granted. Once a state, say a state has withdrawn an existing certification. At that point, the project owner can apply for a new certification, and the state can do all the same things it could do under the statute, as if nothing, none of that had happened. It could waive the grant or deny it. If it waives at that point, it is properly waived, and FERC would have authority to issue a license. So here, so the difference is between waiver and withdrawal. Right, there's a state that has to do waiver and withdrawal. So here, you think the state could have withdrawn it based on the settlement? Well, it would have had to go through its own process, and frankly, I think it would have had a very hard time explaining in that process why it suddenly decided that all the things it found necessary to protect the river and the bay were not necessary, but yes, it could have gone through that process. Yes, it could have done it. Yes. And then that wouldn't be a waiver. That would be a withdrawal. That would be a withdrawal. And from your standpoint, and that's not a question of federal law, it's a question of state law, whether the state adheres to its own processes in effectuating the withdrawal. But if the state does that, and that's okay, then FERC doesn't have to issue a license at that point. Right. If the state goes through the entire process, withdraws, the applicant reapplies, and the state then waives its authority, the Clean Water Act is satisfied. One more follow-up. Do you think that in the circumstance in which a state, as a matter of administrative or judicial review, decides that the certification was erroneously issued, then it doesn't take effect just sort of as a matter of by operation of state law, that the state has to follow some process to actually withdraw the certification apart from just vacating it as a matter of judicial review? Right. The state's part to vacate it or the state in the administrative process can withdraw it. Both of those things are possible. But the end result of both of those situations is simply that there is no certification. Okay. And so in this case, for example, if the state had a process under which it allowed for settlements like this one, and then it allowed for vacator of the certification upon settlement as a matter of state processes, that would have been fine. That would have been fine. You'd still end up with a situation where there was no certification and it would be up to the state to then either waive that or do this. Right. But it takes you back to square zero. But that would – okay. I'm just confused about your – back to square zero. So say a company absentifies on January 1 for certification. March 1 is issued by the state, and it's subject to internal review, so evident you're hearing these types of things. October 1, through its own internal processes, the state goes, whoops, we totally messed up. This is indefensible certification. We've got to withdraw this. And then nothing happens and now it's January 1 of the next year. Why can't then the company that asked for this information go to FERC and say, a year has gone by. They never issued a certification. Let's proceed to get the license. They didn't act. Because the act that the statute talks about is issuing a certification or not. And it's not the put some baby steps towards issuing a certification, took some tangent steps. Either they issued a certification or didn't. They didn't under my hypothetical. Why isn't that sufficient to go get a license from FERC? You keep saying they have to apply and start all over again. I don't get that part. I want to make my understanding because in October, the state is recognizing that it messed up. Yes, it tears it up. It doesn't just tear it up. It also issues a decision in that rehearing process that it is withdrawing. No, not in my hypothetical. Let's say their administrative process is like a mediation process. You're right, we totally messed up. We're going to just pretend it never happened. They aren't saying anything publicly other than it's been withdrawn. And they can say that publicly, it's been withdrawn. If they want to say it's withdrawn in that administrative process, then they're withdrawing it. Whether they've withdrawn it adequately. Yes, so they said it's been withdrawn. I'm not going to say they give the reasons. That's a matter of state law. And then I understood you to say is then the company still has to apply again for a certification. I don't know why they can't on January 1 or 2 of the next year go, we asked for a certification on January 1, a year has elapsed, and we have nothing from the state. Go ahead, FERC, issue the license. I think I understand the hypo better now. Sorry. I think there is at that point a withdrawal. The state has withdrawn. The statute doesn't talk about withdrawals. I just meant that what I thought was happening in your hypo is that the Yes, the awkward fact, I guess, as I understand the hypothetical, and you're much more expert than me, is that a year has elapsed and there's no piece of paper from the state. They're right. If the state does nothing, I suppose there might be. Does that process I've described count as the state doing nothing? Well, I'm not entirely sure. To me, that process sounds like the state withdrawing the application. Sorry, withdrawing the certification. But if I'm wrong about that. I'm not understanding the magic words, state withdrawing the application. That seems to be what you find magical. Is withdrawal of the application something in the federal statute? That doesn't matter. Okay, so why does that matter? Maybe it matters under state law, and they can have a state law litigation. But for FERC's purposes, the company says, I applied January 1, 2021. It is now January 2, 2022. And I've got nothing from the state. Issue your license. What is wrong with that? Under the federal statute, not state law. Right. When you say that you've got nothing from the state, if there was truly nothing from the state, then that would be great. Under my hypothetical, you've got no certification from the state. Well, there's a difference between no certification and a waiver. If there is no certification, there's simply no certification. That means that the parties are back to zero. What do you mean the parties are back to zero? If there's no certification, why is that not a failure of the state to act? That is to certify or make a decision not to certify for purposes of FERC. I don't know why FERC can't say a year has gone by and the state has declined to issue, has refused or failed to issue a certification. The options that are available to the state in that review process include withdrawing certification. What do you think FERC is supposed to do when that company comes to them on January 2nd and says, the state has either refused to act or failed to act because I've got no certification, please issue the license. What is FERC supposed to do? If the state has withdrawn the certification, as it did, for example, in the FPL case, remain through the administrative process and said, we're vacating the certification. Just please answer my question. What is FERC supposed to do? FERC is supposed to say there is no certification. You can't issue a license. If you want a license, ask for certification. You don't have a certification, but you also don't have a waiver. The state withdrawing a certification is not the same as a state waiving certification. And the same difference is- Why isn't it? Okay, I'm sorry. In the withdrawal, they said, oops, this never should have happened. Big mistake on our part. We were thinking of a different case. We had the wrong case number. And we're withdrawing it. That's right. So that certification is gone, and the applicant then has two choices. It can apply or not apply. And the state then has all of its choices. It can grant, deny, or waive. What if the federal statute says they have to apply again, as opposed to saying the state has failed to act on our certification request? It's gone nowhere for a year. Federal statute just says, FERC blocks the authority to issue a license unless the state has waived in a very specific way, which is- Failed to act. And withdrawing a certification is not the same as failing to act. Why? Because the state has necessarily acted on the certification by granting it in the first place. But wait, a refusal to act. A piece of paper that says we refuse to do this is an action. Correct. No, actually, no. That would be what EPA calls an express waiver, but what the Environmental Protection Agency- Which is an action. If the state writes a letter, say the state doesn't want to just waive a three-year and let the waiver happen on that. Say it wants to let the project move forward on the second day. It can write the applicant a letter and say, we are waiving certification right now. But what EPA explains in its regulations, in the preamble to its regulations implementing Section 401, what that means is the state is saying we are choosing not to act. Which is a refusal. Because the statute says fails or refuses to act. Yes. And there's got to be something that's a refusal that's not just a failure. And an affirmative indication by the state that we actually are not going to go forward with the certification. It's a refusal. You can call it an express waiver, but it's a refusal. That's where it fits in textually. Could you rewind five minutes and finish explaining what happened in the Maine case? In the Maine case, the only point I wanted to make is, and this is the FDL case. I think it's cited in Constellations where you can also mention it. Yeah. The certification was issued, and Maine then withdrew it, or vacated it in the administrative process. Then what happened after that? Do we know? So at that point, when Maine withdrew the certification, could the applicant, what would happen next? Actually, I'm not exactly sure what happened next in the case, but I would say what the applicant could do is simply reapply. Reapply. At that point, it had no certification. So the withdrawal, the vacating of the certificate, also essentially vacated the application. So the clock's no longer running, right? The clock's no longer running. So the clock starts over again if the applicant files another application for a certificate, right? Yeah. Okay, great. Thanks. So it counts as, I mean, I understand it's a little bit odd to say that what we're calling an action and then a retraction of that action, which means there was no action, actually was an action. That's where we are, right? So I agree with that, and I would add that the original action is actually to preclude from issuing a waiver based on failure. So once that certification has been issued, there cannot be a failure or a refusal to act. There has been action. That history cannot be changed. It doesn't mean that it's safe for handcuffs. They can't fix the problems. It just means they have to go through their own process and vacate the certification if that's what they want to do. Even our cases say at some point it can't be that the withdrawal of action ends up being a gainsmanship that just extends. That's right. It estranges the gainsmanship and duplicates. So when they withdrew, they said, we're withdrawing this and we are now waiving our rights. I hear you. I'm just saying if they said we're withdrawing this for whatever reason or no reason and we are waiving our rights to issue a certification on this matter, what would that be? They couldn't do that. A waiver is something very significant. It has to be a failure or a refusal to act. They could withdraw for sure. Why is it a refusal to act when they then add a next sentence that says, and we're hereby waiving, because we refuse to act on this matter. The refusal to act has to be on a certification. Just by adding that sentence, withdrawal, it doesn't mean they refused to act on the certification in the first place. They did act. They had to act because they issued it. They can't change their mind. That's what you're saying. There's no way they can change their mind on the initial certification. They have to wait for a whole new initial application. They have to wait for a new application. That's right. They have to wait for a new application. It doesn't mean they can't change their mind. It means there's a process that they have to go through. Where does the federal statute say, what language in the federal statute says they couldn't say we're withdrawing it and we are hereby affirmatively and expressly telling you that we refuse to act on this matter, on this application? Because that withdrawal, once the state has acted on the certification request, the action on the certification request matters. Not just any action on a certification request. And if a certification exists, it can only exist because the state has, in fact, acted on the certification request. Now, I suppose the state could build in contingencies so that the state could say, we're issuing a certification, but every certification is subject to a period of 30 days to make sure that it was actually appropriately issued. And if that contingency is built into the state's certification process, then you wouldn't say it's a one-way ratchet, such that once they issue the document, it can never be retracted in a way that gets us back to square zero, as opposed to getting us to the point that you say, which is that's actually still an action, the withdrawal is still an action. And so you need a new application for certification. I think that's right. Okay. Can I ask you, sorry Dr. Chadle. No, no, go ahead. Are you sure? Yeah. I was going to switch gears a little bit, which is suppose that, suppose, just for argument purposes, I know we're going to hear an entire slew of arguments about why this premise is wrong, but suppose that we were to agree with you on this argument under 401. Why is the consequence of that not simply vacator of the license, as opposed to what you're asking for, which is not just vacator of the license, but actually imposition of the conditions that were in the initial certification? That's just not something that's standard administrative law for us to do something beyond the standard vacator. I agree, Your Honor. And the waiver argument itself wouldn't lead to an order directed to EPA to issue a license for the certification. The reason we make that argument is that it's relevant. Whatever it forces to do doesn't withdraw the certification. It says Maryland is waiving its rights to issue certification. That doesn't change the fact that there is an existing certification out there. And Section 401B of the Act says that any certification has to be incorporated into any license. So it's a separate argument. We would be happy if the court vacates the license, but we think that because the certification was never properly withdrawn, the law requires it to be vacated in search of the license. So you think the consequence of vacating the license is that the certification that both parties assumed was no longer in effect, actually by operation of federal law or for purposes of federal law, remains in effect such that FERC has no choice but to issue the license based on the conditions in that original certification? It is possible that the state could continue its review process. It's important to remember that Maryland and the DAM company abandoned the state review process before it ever got anywhere. And so it is possible that they could continue that process. But we think that, yes, as of now, there is an existing certification and it can be included with the license. Well, but see, that's interesting. Just to pursue the Chief Judge's question, if, as you request, we not only vacate the license but direct FERC to issue a license consistent with the 2018 certification, if we do that, then what process is left for Maryland? The license has now been issued. Can they still do their normal procedures, whatever they are, reconsider the underlying certificate? I wouldn't think so, right? If the court orders FERC to add the license, no, I think that would be the end of the problem. Right. So the only way Maryland would be able to invoke its own procedures to reconsider the 2018 certificate properly would be if we limited our release to vacating the license, right? Yes, that's correct. And I see. Yes. And would that – why wouldn't that satisfy – I understand that doesn't give you everything you want, right? You want a license with the 2018 conditions in it, correct? Yes. Yes. It would be very, you know, it would be very good relief to the petitioners. It would be even better to have those extra measures in place. I guess what I'm asking is since we know Maryland – the whole purpose of this statute was to give the state – put the state in the driver's seat, right, on these kinds of cases, right? I mean, that's what the purpose of this was. I fully agree with that, Your Honor, but I think it's not the whole purpose. The purpose is also to protect. The primary purpose is to protect the water. Point well taken. But it was to give the state a primary role. So given that, wouldn't we – and given that we know that Maryland now has some concerns about the 2018 license, wouldn't it be – to balance all these together, wouldn't it be better for us, assuming we agree with you about the statute, to vacate the license, which leaves Maryland in a position, if it wants to, to invoke whatever administrative procedures it has to reconsider the certificate, and which you agree it could do in another case and ultimately decide to withdraw the certification and start over again, right? That would leave the state – that would still leave the state with a semblance of authority under the statute, which it clearly has, right? Yes, Your Honor. Otherwise, if we don't – if we do it your way, we cut that off, correct? If we do it your way and vacate in order for it to issue a license based on the 2018 certificate, we cut off Maryland's authority under the statute to reconsider the – to reconsider the 2018. Yes, that's expected. If I could add just one more point on remedy. You know, the Department of Interior did ask to give the license that they needed, like, to leave officially prescription, cover and remand, I believe cover and remand prescription, you know. How would we do that? I don't know. That one. All right. Well, maybe they can tell us that. I think we can do that. All right. We have some time for rebuttal. Thank you, Mr. Pugh. We'll hear from Commission Counsel now, Mr. Edgar. Your Honor. Hey, this is Gordon. I'm Scott Edgar from the Federal Energy Regulatory Commission. Thank you for hearing the case today. I want to make some broad points initially about this. I'm just going exactly to Judge Taylor's point. Could you – could I just trouble you to just lower the podium a little bit just to make sure your voice comes through, or just the mics just a little bit? Indeed. We do agree that the purpose of the Clean Water Act, which is a big characteristic of the Clean Water Act, is to put the state in the driver's seat when it comes to enforcement of water quality standards. To that end, the most obvious explicit expression of that is 401 itself, which gives the state this incredible power to veto a project. We think the Commission's interpretation of 401 has honored that. The petitioners here are relying on language in 401A, which discusses one type of waiver, which is waiver in the instance where the state doesn't act. It doesn't say waiver – state waives its authority, including through waiver or failure.  I know that the argument in your brief is it doesn't preclude Maryland from doing what it did, right? Because it isn't excluded. But that isn't the way we read statutes like this. I mean, if a statute said, you know, an agency can issue three kinds of licenses, A, B, and C, we wouldn't say that, well, it doesn't preclude D, and therefore that's okay. Isn't that this case? It says very clearly, it says, it says, it says, no license or permit shall be granted until the certification has been obtained or has been waived as provided, as provided by the previous sentence. I mean, that's pretty specific that Congress is saying the waiver has to be as provided in the previous sentence. And there's only two ways to waive it. So I don't see where we get the flexibility to say, well, there's a third one because it isn't excluded. Let me try to just – I think you presented me with a hypothetical that is negative implication. Because if certain things are provided, then you can't do the other. And as the Supreme Court pointed out in March, that that argument makes sense, but it doesn't make sense if we can't conclude that Congress thought of the unnamed thing, that is, the general rule that any person can waive their statutory right. We have to conclude that Congress thought of that general point and intended to prohibit it. So what would we do? We would look at legislative, at congressional reports to find out? Yes, Your Honor. That's not the way we interpret statutes anymore. I mean, we're looking at the language of the statute. And, you know, we don't have very many, we don't have very, we don't deal with a lot of clear statutes. But I honestly, I'll just tell you so you'll know where I'm coming from. I just don't see where with the language in this particular statute where it says, where it says, it says, it says no license shall be granted until the certification required by this section has been obtained or has been waived as provided in the previous sentence. I don't know why, where we would get the authority to say, well, going back to my hypothetical, there's no evidence in the record, legislative record, that Congress thought the agency might do option D. So now we can do it. I think we could look at legislative history and conclude that that language was intended to prevent a state from deleterious. And so that's the kind of way for this. Okay. I'm sorry. I just want to keep this thread going. So if we found a Senate report here, or say someone stood up on the floor of the House who voted for this thing and said, okay, well, let's stick with the report because that's stronger legislative history. And the report says, yes, there's these two ways to waive, but the Congress in enacting this does not intend to preclude the state from working with the operator to come up with an alternative certification. That would be enough. I'm not sure I follow the hypothetical. I think the two types of waivers are completely different things. One, the waiver that we're talking about expressed in 401A is a waiver intended to force the state to act. And by not allowing the general form of waiver, you would actually have the absolute, you would have the contrary outcome. You would be thwarting the congressional purpose here. If I have a waiver after the state review already happens and actually ratifies the certification, suppose the review is completed and all the challenges to the certification fail. And then the state says after that, actually, you know what, we're waiving. I think that's a harder case. But if the statute doesn't, as I understand your textual argument, the statute doesn't preclude other kinds of waivers, including, this is a waiver after certification. That's what kind of makes this one. I think it's the linchpin of their argument. So what's to stop that from happening? I think this gets harder as we go along. I think one important part would be the issuance of the license. I think as long as the waiver… Right, but here, FERC just waits. So they're going to wait out, the commission's going to wait out the state review process. That's what was going on here anyway. And so the commission just waits. And then the state review process ends. The state review process ends in a ratification of the certification. In other words, a rejection of the challenges. And let's just suppose that there's a new composition of the state comes in and says, yeah, we should never have granted that certification. We waived it. I think it would be available. And I think that the proper recourse, and the recourse that should have happened here, would have been to challenge that action in the state court. And argue that it's arbitrary and capricious or something to that effect. And then the experts on state water quality standards could take a look at the action and whether or not waiver is, waiver violated state law. Well, if we vacate the license, that process can go forward. Right? Sure. As long as we don't do what Waterkeeper wants, which is to order her to issue a license based on the 2018 certificate. If we just vacate the license, Waterkeeper has conceded that the state can still reconsider all of this. Right? That should have happened already. And it didn't. And Waterkeeper had an opportunity to. But Waterkeeper was relying on the statute that said there were two ways to waive it. Why did it have an obligation to do anything else? Let me ask you a second question about your theory. What language in the joint settlement do you think actually waives, actually acts as a waiver? What is the language that does that? I believe that section three points to A1. Why don't you read me what you think is the best one? And that's the language that's... Sorry, what? That's the language where the state says that it waives its right to issue a water quality certificate. You know what, that's in the J.A. Let's just read it, would you? Yeah. Find it and read it, please. Three point two A1. J.A. what? J.A. Is that the end of the sentence? Goes on to define that action as a conditional waiver. Well, that was my point. What's a conditional waiver? It says this is a conditional waiver. Again, we're back to the statute. The state itself, the statute says waiver, and what the state has done is issued a conditional waiver. So even if your theory is correct, does it really waive in accordance with the statute? I believe so. I believe the waiver we can complete upon action on this document, the settlement that was filed with the commission. This is conditioned on approval of the proposed license measures. But that's not a waiver. It's not waiving its authority under the statute if it's saying we'll waive it so long as you accept our conditions. Again, see, it's another example of where you're departing from the plain language of the statute. Aren't you? I don't need to state it as affirmed. That was a question. We don't believe that. That was a question. We don't believe it's a plain language. Congress hasn't addressed the issue of whether a state can affirmatively waive. EPA has interpreted this language as readying an affirmative waiver. This court has now pulled it forward. But the statute says you can refuse to waive, which is what an affirmative waiver is. I don't think the statute saw it. You can waive by failing to act, or you can refuse to act. Wouldn't refuse to act include an affirmative waiver? I don't think so, Your Honor. Would you hereby announce that we refuse to act on this? It's not a waiver? I think it's an interpretation that's being advanced here by the petitioners. I'm just asking you my question. In response to this, you were relying on the ability to do an express waiver in response to Judge Tatel's question, but I don't think that's any gloss on the statutory language, which includes refusals. Refusals require some expression. I don't think that's a natural consequence of what the petitioners are advancing here. I don't. I think the language— I was just trying to understand your answer to Judge Tatel, where I thought you were saying that it requires a gloss on statutory language to allow affirmative waivers. Did I misunderstand you? I don't think so. I think what I'm trying to say is that the statute doesn't permit the affirmative waiver here that EPA says is possible, and this is where it's said in a pro power that a state waiver— The statute doesn't allow the affirmative waiver that Maryland did here? I'm saying the arguments advanced by petitioners suggest that the statute doesn't allow affirmative waivers. It suggests that that would not be permissible. And as written, the commission cited the EPA website, the commission cited the case from the Northern District of Mississippi in 1980, and this court's expression in a pro power, which stated that a state waived during the state administrative process. Can I ask you one question? I just want to know whether the commission has a view on this, and we can ask the parties to the agreement, too. But if we were to vacate the license, is the settlement agreement still in effect because FERC did issue the license, thereby satisfying the condition that was set out in the agreement? I think there are a lot of moving pieces here, and I think Your Honor raises a good question. I don't want to get ahead of the commission on a question like that, but I think that's an important piece of this is that part of the settlement was the acceptance of the licensee's withdrawal of the mission for the territory order based on Hoopa Valley, and that posed a significant risk to the state because they stood to possibly lose any entitlement whatsoever to make any conditions whatsoever. And it's not clear to me how that would play out. So from the commission's perspective, the commission's not in a position to say what the direct consequences of a vacater of the license by us would be. I think that's right. I wouldn't want to get ahead of the commission on that question. And for that reason, according to the allied signal factors, we strenuously urge this court to consider remand without vacater. Without vacating the license? How can we do that? Under disruptive consequences, I think I would distinguish this case from other cases where the court has been concerned about the idea of building something and then explain it later. And that's not the situation here. But usually it has to be a circumstance in which at least the thing that was flawed can be rectified. Whereas here the problem by hypothesis, assuming that we don't accept your argument, obviously, can't be rectified because it was in violation of laws and was in contravention of Section 401. I think it's a harder case than the case where, say, if the error is an EFA-related or the balancing under the Federal Power Act, certainly. But again, this is not a case where I think we can all agree that the license here is an improvement over what existed before. The question really is, from a 30,000 feet perspective, is petitioners are asking for even more. All they're asking for, you're right, they're definitely asking for more. But in terms of the existing license, I just don't see how we can not vacate a license that's been issued in violation of law. I'm just concerned about the disruptive consequences. What's the disruptive consequences? It's not like someone's proposed to take the dam down or this is a dam that's under construction and we're stopping the construction. This is an existing operation and people are just debating reasonably, apparently, over what the conditions are. And here's a license that's been issued in violation of law. I don't even understand what basis we would possibly have as a court not to vacate it. I would just add to that. We have just settled that under LSA there were disruptive consequences that the flow regime, the operation of the dam itself, is a huge improvement over what existed before. So, in the anti-world, there were just annual licenses that were being issued? Yes. So, presumably, whatever the disruptive consequences you're concerned about are disruptive consequences for the environment? Yes. Totally understandably. And I take it that that was also the case in a regime in which the annual license was issued. You also had those concerns. And something was being done to adequately address those on a year-to-year basis. The annual license, correct. But it continued basically the existing license from the previous license. Are you suggesting in response to my question, let me make sure I understand. The 2018 certification had a set of conditions. So also does the settlement. But those are less rigorous, right, than the 2018 ones, right? That's why Waterkeepers is here. That's right. Okay. So, are you suggesting that if we vacate the license, the dam operator will cease the complying with the conditions in its own agreement? I think part of what the license here is approval of the settlement, which would have a coercion. And I'm concerned at a vague fear of that approval. Well, we can ask. They're going to argue here. We can ask them that question. Okay. We don't have to guess. We'll just ask. Great. So, colleagues, are there further questions for you? Thank you. Thank you. We'll hear now from Mr. May for the state. We'll leave two minutes allocated to you. As this court and others have recognized, Section 401, the certification requirement, it provides, serves as one of the primary tools that Congress reserves states. Reserves the states. It gave them a choice. You can impose conditions. You can waive. We're not playing. We're not participating in the setting of conditions. Okay. That's correct. And what happened here is we want to impose conditions, but we're going to call it a waiver. That seems to me a door not left under the statute, because you are imposing conditions. Well, the state initially issued a water quality certification in 2018. And following, I would agree with your Honor's questions before, is that the statute, the text, does provide for affirmative waiving. Refusal to act is a form of waiver. And the state, although it initially acted, later, by entering into the settlement agreement, submitted to FERC a joint offer of settlement. But it didn't refuse to act. It said, we would like to have these conditions imposed. And if you impose these conditions, then we will waive. That's what seems to me the one thing a waiver isn't, whether expressed or not, is the imposition of conditions on the license. In a certification, it's waiving the certification requirement. It's waiving the ability to have those conditions imposed in the license through a certification issued under the Clean Water Act. What's the difference, if you can get to it? Because it was able to secure those conditions in a settlement agreement, which occurs all the time. If you had done it through a certification, the statute would require you, as part of that certification, to confirm that the conditions comply with applicable provisions of the Clean Water Act 1311, 12, 13, 16, 17. And your original certification did that, in terms. That's correct. Of course, your settlement agreement doesn't say that the terms you now want to impose do comply with these provisions. And so, isn't the concern with a waiver of conditions that it's a complete end run of Maryland's obligation to certify that the conditions it selected comply with these federal law provisions? Or did they comply with it? The state has the authority, as this Court recognized, it alone determines whether or not to certify. Whether you use the power provided by Congress in Section 401. And the state has the authority to waive that. When the state waives, just to follow up on Judge Millett's question, when the state waives, what imposes conditions? And I take your point that the conditions that are being imposed are not a certification, because you're waiving certification. They're conditions that are being imposed in a private settlement agreement with consolation. Does the Commission need to incorporate those conditions into its license? The Commission is not bound by the party's settlement agreement. We presented the Commission with a settlement agreement and offer of settlement and asked that they incorporate them as supported by the record before the Commission. But the settlement agreement didn't directly impose any conditions. It was a private settlement agreement between consolation and Maryland. It did not become effective until FERC took the next step. And, well, they agreed it was effective, but the parties, there were provisions and dispute resolution provisions in the event FERC did not take the ultimate step of incorporating the proposed license articles into the license. Had that not happened, then the state would have had a right to terminate the agreement. So the Commission can issue a license without regard to these kinds of conditions in this situation? They could just issue a license without any conditions at all? I'm not saying that. The Commission would have to. Well, I can say. Well, it has to follow the Federal Power Act. Right, but what is in the Federal Power Act that requires the incorporation of conditions that are part of a private settlement? No, I'm sorry. They're not required to incorporate those conditions. That's not what I meant. And FERC could have rejected our settlement. We presented to them. It was placed on public notice. There was a comment period. So what is the status of the settlement agreement if we were to vacate the Commission's license? The settlement agreement is being implemented. The state did not take a position on the ultimate relief in the case. But I agree with what was stated in the Department of the Interior's brief that there would be some disruptive consequences and certainly delay potential interference with implementing the environmental projects that are provided for by the settlement. Well, why is that? So under the settlement, there are provisions to deal with flow, fish, and eel passage, invasive species, and trash and debris. So if we vacate the license, are all those measures going to stop? It's a very good question. It depends on the reason for vacating the license. If the vacating the license includes finding that Maryland lacks the authority to waive. No, no, no. That's not my question. We vacate on the grounds that Maryland has not lawfully waived. That's it. Maryland would still be free. All we did was vacate the license as opposed to requiring a new license subject to the 2018 conditions. All we did was vacate the license. Maryland would still be free to follow its normal procedures and eventually, presumably, if it wanted to, vacate the 2018 certification. I guess we just start over again. So why would these protective provisions be abandoned in the meantime? The dam operator has agreed to them with Maryland. I mean, just because this court vacates the license, they say, okay, they vacated our license, we're not going to protect eels anymore. We're not going to worry about trash. We're not going to do any of this stuff. There were provisions. I'll speak for the state. I can't speak for Constellation. However, there were provisions in the settlement agreement that tried to adjust for what would happen when FERC issued the license. It did not go so far as written in the settlement agreement as to what occurs should the FERC license be challenged. Right. That's just a question to all of them. We'll ask Constellation. But do you have a view? I mean, does the state have a view on what happens with the review? Because as I read the documents, they only talk about FERC's issuance of the license. That happens. That's correct. It's kind of like, it reads to me as if those are in effect regardless of what happens on review. And I don't want to predetermine the state's view on what would occur. What is FERC supposed to do in the meantime? This is what I don't understand about this. If the license is vacated, way more than a year has elapsed since the company applied for this license. Does FERC have to just keep waiting until the state goes through settlement process, administrative process, which could take years? But what is FERC supposed to do? When can Constellation go back to FERC and go, we have nothing? I think there is a risk that Constellation would do that. From the state's perspective, this was part of the underlying litigation. We disagree with Constellation about how the finality of the administrative review. I know you think Constellation, so say, just assume there's a vacature, and Constellation says, we've waited long enough. We've got nothing here from the state. They already have a pending petition for declaratory order that this needs to move because FERC issued the license. So I would expect them to make that argument. The state would argue... Do you think they would be right under federal law to say... No, because the state did initially act within the one-year period in 2018 when it issued the license. The certification. The certification, sorry. And although there's a tendency of appeals after that time, I do not believe that that would result in a waiver. And even the most recent decision from the Fourth Circuit suggested, at least, that act within one year does not even need to include a final decision so long as substantial progress has been made. So the state's position would be that there would not be grounds for waiver. No, so if they went back to FERC, then FERC would have to adopt the 2018 certification? It couldn't issue a license without adopting the 2018 certification? Before the settlement was entered, the administrative appeal process was underway in litigation with Constellation over the terms of the certification, and FERC waited for that to apply. Does it have to keep... That's where I started the question. Do they have to keep... I believe it's a policy to wait, but I don't know that that means they have to. Do they wait for just the administrative process, or do they have to wait for all the litigation? That would be up to the commission, but I believe there are general preferences for settlements, and it will allow that process. And your view is that at least that they could continue to wait? Yes. Well, certainly they could continue to wait. Yes. If they didn't want to wait, the only thing... If they didn't want to wait, then they would have to issue a license that includes the 2018 terms? If MDE's waiver has been deemed ineffective, and the 2018 certification is in place, then that is the only certification that they would have to rely on in issuing the license. Or they could just not... Or they could wait. They could wait until it plays out. Correct. The question of whether the state has waived, well, there's a federal question as to whether the statute provides for affirmative waivers, and it's our position that it does. But it's a question of state law as to whether the state acted properly and followed its procedures in issuing the waiver. The Sixth Circuit said that very clearly in the city of Homestead Falls case. The city of Tacoma case addresses that issue as well. The federal agency in the reviewing court don't look into that process to determine whether the waiver was proper. They rely on affirmation from the state that followed its own processes. But it has to waive. It has to either not act or issue a waiver. It can't. It doesn't have a third option. That's not up to the state. Right? No, I think it is. It is? The affirmative waiver is supported by case law cases, of course, that have examined the text of the act and have not had a problem in finding that states have the ability to affirmatively waive. Yes, I agree with that. Under the statute, the state can waive its rights under 401. Right? Yes. But the question of whether it has or hasn't is a federal question. We interpret the statute, not the state. In other words, we don't have to defer to the state's judgment that what it did here in the settlement was a waiver, do we? I think the case law suggested that the court does waive the state, but you don't conduct an in-depth review of the state's procedures. What in-depth review is required for us to conclude that a conditional waiver is not a waiver? I think it's a question of whether the state has the power to issue that. In addition to the settlement agreement, I also want to point out- We have the power under state law. All we would decide is whether it's a waiver within the meaning of federal law. Yes. That's a separate question. That's correct. And we defer to you on that. I take back what I said. You and I agree. And can you just tell me one thing? The conditions that are in the settlement agreement, do they comply with the affluent limitations of the Clean Water Act listed in section 1341 or not? Because there was no such representation that I could find in the settlement agreement. Yeah, the settlement agreement does not contain any such statement. It's a settlement. Yes, but do they comply with the affluent limitations or not? There's no finding in the record that Maryland- Maryland does not believe that the settlement agreement violates federal law. Maryland has not made that finding in the record. What Maryland has done is- I'm not asking whether you made the finding in the record. I didn't see it in the settlement agreement either. I'm asking whether the settlement agreement did or didn't. It's just a federal law question. Did your settlement agreement comply with the requirements of the Federal Water Act or not? It did not need to comply with the federal act and those. So we don't know actually then whether the conditions comply with these affluent limitations, which the statute makes a condition, requires that any state conditions imposed under 1341 meet these limitations. If the state was using its authority under section 401 to impose those conditions in a federal license, it would have- the record would have to include those conditions. Okay. So, but if you want to impose conditions, the state hypothetically wants to impose conditions, but it doesn't want to have to meet the affluent limitations of the statute. The way you do it is to do a settlement agreement and get around this requirement if you were to be up front about a condition imposition. The state has an ability to waive section 401 authority. Yes, but waivers- under the statute, a waiver is a decision not to impose conditions. But you have now come up with a settlement with a way to impose conditions, assuming FERC goes along, a way to impose conditions without meeting the statutory prerequisite for conditions. Because we're not using the section 401 authority to impose those conditions. Right, and that's why FERC doesn't actually have to incorporate the conditions into its federal license at all in this circumstance. Does FERC have to find that they comply- that the conditions comply with these affluent limitations of the Clean Water Act before it can incorporate them? FERC did not need to make that finding. FERC has made the finding that the- Is that finding supposed to be asserted by the state when conditions are imposed? Through water quality certification, that's correct. But you don't have to make that affirmation when it's not a certification. That's correct. Yeah, because you could- in other words, what you're saying is, we could have waived all along. We could have just refused, and we could also have entered into a site agreement. Yes. We just did that. Just collapsed it into one, and we said, we're waiving, and we're entering into this agreement. Yes, that's correct. I'm receiving an application that states that issue an affirmative waiver. But I don't want to sign this waiver. But I just did want to point out, the joint appendix 588 is the joint offer of settlement and explanatory statement that was presented to FERC. And that contains the conditional waiver, INDE, in addition to what was pointed out in the settlement agreement. Thank you. Thank you. If I may, Mr. DeBruin, I have your help from you now for three minutes. Thank you, Your Honor. May it please the Court, David DeBruin for consolation. I think it's very important to start with the legal framework. Before you do that, could you just answer the question we've been asking everybody else, but you are the only one who probably knows the answer, which is, if we were to vacate the license, would Constellation continue in place these provisions to protect eels, fish, and things? Your Honor, Constellation certainly was previously under an obligation to protect the environment under the interim licenses. It would go back to those interim licenses. And absolutely, Constellation would take all adequate measures to protect the environment, the fish, the eels. Right. I think it's important for the Court to understand the context. Can I clarify your answer? You said you would go back to the terms of the prior license. Under the settlement agreement, are the terms for protecting eels and other fish more protective than they were under the annual license that was being issued before? They were. They were. And so if this license is vacated, when you said we'd go back and we would protect the environment, are you going to protect it under the terms of the old license, or are you going to continue to protect it under the terms of the settlement agreement? So several things there. First, I think this Court clearly has authority, even if it were to reverse, which I will argue in a minute. There is no reason to do. But this Court does not need to vacate the license, even in cases in which it finds a violation of law. And I can cite you three cases that this Court has decided, including recently, that has found that a remand without vacature is appropriate, even in cases where it finds a violation of law, in order to leave in place an environmental scheme that is more protective. So the situation was— I'm just asking what the company would plan to do. Would it continue with the settlement terms for protecting fish, or would it revert to the terms under the one-year license? The annually reviewed one-year license? We don't know what the Court's order says. We don't know what the Commission— The Commission order is just a vacature of the license. I'm asking you what, as a matter of—I think I'm trying to ask you what Judge Tatel was asking, and now I have the same question. But the company can choose either of those paths. It would have to, at a minimum, do the one-year license. There was a settlement agreement that included a number of provisions, including significant reductions in the flow regime, which is the way the company is able to make money by operating a hydroelectric plant. So I cannot say, without knowing what the Court does, whether we're going to pick and choose and impose obligations on the company while at the same time— Okay, well, a very simple question. We'll tell you what the Court's going to do. Assume the Court vacates the license. That's just a hypothetical. Just assume we do. Is the company going to stick with the flow requirements in the settlement agreement, or is it going to return to the flow requirements in the 2018 license? I cannot answer that. I can tell you that I— That's why you said you could answer if you knew what our options were. Well, if that is your option, I cannot tell you what the company would do or be required to do. Okay, why don't you give us—what are the three cases that you want us to look at? And just to be clear, these are three cases that stand for the proposition that we can— Yeah, we can vacate, even if it's— You can remand without vacature, even if you— Yeah, what are the three cases? What are the three cases? North Carolina v. EPA, 550 F-3rd 1176. Okay. U.S. Sugar Corp. v. EPA, 844 F-3rd 268. American Great Lakes v. Schultz, 962 F-3rd 510. Can I ask—can I ask this question? Some of the questions are presupposed that the company would choose whether to, in the event of a vacater of the license, the company would choose whether to revert to the last annual license or the settlement agreement. My question is, does the company have a choice, or did the settlement agreement already kick in because the license issued? So it doesn't matter what happens on judicial review. The settlement agreement is actually operative. But the settlement agreement imposed a series of interrelated conditions. If certain conditions, limiting flow and other provisions, were incorporated into the license, the company in turn agreed to a series of provisions. But ultimately, the company operates pursuant to a license that is issued by FERC. So if this court were to vacate the license, we have no legal authority to do anything unless and until FERC issues a new license. In the past, when our long-term 40-year license had expired, FERC addressed that problem by issuing interim licenses that continued on an annual basis. I'm presuming that if this court were to vacate the license, which it should not do legally, and even as a remedy, need not do, that the commission would have to decide what license to reimpose, and I presume they would reimpose the interim license. We would have to look under the terms of that interim license how to operate. So there's no room, in other words, for a separate agreement on top of the FERC license under which the company undertakes additional protective measures? Possibly, Your Honor. First and foremost, that's the operation. But if that's possible, then why isn't that the case? Why doesn't the settlement agreement just do that? Well, because there could be inconsistent provisions between what FERC is requiring and I'm not going to stand here and say, without looking at the agreement, what the company may or may not do. But is that conceptually possible? It's not inconsistent. I take your point about inconsistency. You can't have things at loggerheads. It's conceptually possible that the company could voluntarily choose to do things above and beyond what it's likely to do. And that it already has by entering into the settlement. Possibly. Again, I don't read the settlement agreement that way. Why don't you? Well, again, the structure of the settlement was a combination of provisions, including the company took the position that Maryland had been waived by failing to act over the course of many years, which we raised essentially a Hoopa Valley-type argument. That was one of the very significant legal risks Maryland faced. And Maryland chose to enter a voluntary settlement of its rights, which is a bedrock fundamental legal principle. The parties who have legal rights can waive those rights. And that essentially, the company then agreed to withdraw the Hoopa Valley challenge if FERC accepted the party's offer of settlement, which is a very common procedure at FERC. Parties propose offers of settlement to the commission all the time. FERC is not obligated to accept those offers of settlement. FERC has its own both power and responsibility under the Federal Power Act to develop the waterways of the nation for use of clean, renewable electric power, but also to protect the environment at the same time. And Congress said in the Federal Power Act that FERC should give equal weight to those two goals. Develop the waterways for use of clean power, protect the environment, and FERC issues license accordingly. So we proposed terms to FERC, and it was up to FERC under its own discretion under the Federal Power Act to accept them. If FERC did that, Maryland agreed it would waive. And I'd like to, if I have, before my time runs out, provide the court, what I think is a critical legal framework for this case, which is why Section 401 clearly allows Maryland to affirmatively waive, even though there's nothing in the text of 401 itself that addresses an affirmative waiver. I'm sure this court is familiar. Courts read text in context and with a view to their place in the overall statutory scheme, and, as the Supreme Court held in the Marks case that we cite, quote, background presumptions are a highly relevant contextual feature. Here, there is a firmly established background presumption, and I quote from this court that statutory rights are generally waivable unless Congress affirmatively provides they are not. That's the Price case, also the Supreme Court case. But, you see, that, all that, that just begs the question in this case. Of course they're waivable. The question is whether this statute limits the waiver to the two circumstances in the statute. So, two things, Your Honor. First of all, I don't mean to interrupt. That's okay. Go ahead. What the text of 401 is addressing is not waiver at all in the traditional sense. Section 401 sets a condition of forfeiture. As the Supreme Court has said, and this is the Milano case, quote, waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right. In 401, Congress imposed a statutory condition of forfeiture. If the state fails or refuses to act within one year, and I submit that that statutory text, fails or refuses, does not encompass an affirmative waiver, Congress imposes a forfeiture. A failure to act within one year is a forfeiture. And in this case, Congress went further and treated it and called it a waiver in the sense that, unlike most forfeitures, which may be excused, waivers, a knowing intentional relinquishment of a right, is not excusable. There is a difference in various contexts between forfeiture and waiver. Under the plain error rule, certain rights can be, plain error can be waived. The plain error cannot be forfeited under Rule 52. So there is a difference. This statute is talking about a situation of forfeiture, clearly. It calls it a waiver because it doesn't intend for there to be a way for the state to excuse it. No part of this statute is dealing with waiver. The background principle that rights are generally waivable unless Congress says otherwise. Congress did not say otherwise in this Provision 401 that these rights could not be waived. When Congress intended for rights not to be waived, it said so. It said so in Section 403, just two provisions later. There is nothing in this statute that is addressing waivers. In the second sentence, the issue to focus on, the first saying that a state that fails or refuses to act within one year, the right shall be to use the word waiver, and FERC cannot proceed unless. What's the limit on waiver, if that's reading into statute is right, such that it doesn't touch waiver at all? Even though it calls it waiver, it's dealing with what we traditionally get forfeiture. Of course, we know Rule 52 and all that. What's the cap on waiver past certification? So rights traditionally can be waived even after they're asserted. So we all know a defendant frequently asserts a right to trial. Is there any limit? There is no limit beyond the typical requirements of waiver, which typically is that a waiver be null and invalid. And in fact, the petitioner's argument today practically makes no sense. What if FERC issues a license? Well, that is an interesting limitation. So it is a limit? Well, yes, in this sense. So the statutory scheme is set up in such a way that any federal agency, including FERC here, cannot issue a license that involves a discharge into navigable waters unless there has been either a certification for forfeiture or, presuming to the background statutory presumption, a waiver, which is within any party who has a statutory right to do, to waive unless Congress says otherwise, and Congress didn't hear say otherwise. Once FERC issues a license, the state's 401 powers are essentially over. And at that point, FERC has issued the license. It can modify the license, but the license is within FERC's control. Now, FERC has said as a matter of practice that when state proceedings are ongoing, either state administrative proceedings as here, the state administrative agency itself has not even finished its process. It had issued a certification prior to trial, subject to reconsideration. All of that remained. FERC has said if state processes remain, it will exercise its discretion, typically, to adopt changes from that process and modify the license. Again, FERC has the power at any time within 50 years to modify its license on an application of any party. But legally, upon the issuance of a license, the 401 power of the state has been eliminated. FERC has now issued the license, and it's up to FERC to change it. But what is critical is that the power the 401 gives to the state, which is a very significant power, is the state's power. And like any right under any statutory background principle, the state can waive. It's no different than under 1983, which says every person who deprives another by color of state law of a constitutional right may be found liable. That's an absolute sentence. Every person. And yet, it's an important imbler in other cases that's recognized. The background principle is there are immunities. There are absolute immunities. The judges, prosecutors, and others cannot be found liable under 1983. Why? Because that's what the text is? No, because that is a background principle. Let me make sure my colleagues don't have additional questions for you. Can I just address what – I guess I have addressed the remedy point again. I don't believe there's any need to consider remedy here, but because the court has raised it, I do believe, under the authority, because a vacature of the license would be disruptive to the environmental benefits of the current license above and beyond the previous license, the court can and should, at most, remand without vacature and let – because not only would there be environmental disruption, but I submit to you that as a petitioner, we can get to the same place as we are now, apparently under adherence to a state process, as they concede we can do. I submit that's exactly what we did do. We adhered to a state process. We settled the petition for reconsideration. I don't know what more, but in any event, you can go back and come to the same place as we are today. Thank you. Thank you, Mr. DeBrun. Mr. Bies? Thank you, Mr. Court. John Bies here representing the Department of the Interior on behalf of Fish and Wildlife Service. Congress enacted Section 18 of the Federal Power Act to protect the environment when hydroelectric power plants are built, to ensure that they don't harm the environment by interfering with the passage of fish, migratory fish, up and down rivers. The Columbia Dam was built in the 1920s, 10 miles from the Chesapeake Bay, in the Susquehanna River, which is the largest watershed on the eastern seaboard. The dam, along with other factors, has harmed the population of American shad, river herring, and American eel, which play an important role in the water and aquatic environment, both as prey and in promoting the growth of mussels that filter the water, and also have been important to human endeavors in the past for recreation and for food source. Sadly, the population of those fish has been severely diminished by, among other things, the dams on the Susquehanna River. Before the 1921 license, the dam included two fishways, one built in the 1970s and one built in the 1990s, but the study and research done in connection with the application process for this place in 2009 showed that there was inadequate to protect the healthy population of these fish, and through the Fish and Wildlife Service engaged in years of effort, including research and scientific study, working with the company, and drafting language for prescriptions, it culminated in the April 2016 settlement in modified prescriptions that can help improve the population of these fish in important ways, including a trap and transport program that the company agreed to plant that moves the fish from below the dam, some of them all the way above the dams, the upper Susquehanna, through some structural improvements to the two lifts that are significant investments of resources and are staged based on the date of the license. So the obligation to make certain prescriptions takes place a number of years after the license is issued. So you don't want us to vacate the license, right? I apologize. You don't want us to vacate the license, right? If you were to vacate the license entirely, it would mean all of these protections would be gone, including the significant infrastructure changes to the lifts. And in response to Ernest's questions earlier, well, the annual licenses that presumably would fall back into place if the license was vacated might include some protections. Historically, people forget that. Well, they would be protected if we did what Waterkeepers wants, right? So you would not vacate the license in order for the issue of license based on the 2018 certification, right? That would delay the process for which all these infrastructure changes would be made. Why? Because you don't have the date of the license issued. So the company's obligation to make the changes to the west fish lift and the east fish lift would be... I'm sorry. Aren't the 2018 provisions, aren't the conditions in the 2018 certification more rigorous than the ones in the settlement agreement? There are some additional features for fish passage in the MVE settlement that weren't in the modification description that they should modify for each, but the important one changes from services perspective are these important infrastructure changes, which I think would be delayed. Well, where did they come from? Did they come from the 2018? They come from the modified prescription that the service implemented as part of the license through their April 2016 settlement with the company, and then FERC approves the modified prescriptions that are in the patent. Your point isn't that the settlement agreement actually is less protective than the 2018 certification. Your point is not based on the relative protective degree. It's based on the temporal dimension. The trigger date is delayed if you go back to the 2018 instrument because we'd be issuing the license on a particular date, and then the time frames would only kick in at that point. The obligation of the company to make the infrastructure changes is keyed off the day of the issuance of the license. If the license is vacant and a new license is issued, it would affect... So even if they're more rigorous, even if they're more protective measures, they'd take longer to come into effect. Assuming that the new license incorporated the same prescription for first class. I'll make sure my colleagues don't have additional questions for you. Thank you, Ron. Thank you, Mr. B. If I can just conclude, we think that the court has expression that the cognizant of the concrete realities on the ground here, that the damage there, the fish are there, these measures will protect them. Thank you. Thank you, counsel. Mr. Pugh, I think we're back to you now. We'll give you three minutes for your rebuttal. I'd just like to make a few points. The first one is about the idea of permanent waiver, and we've discussed that before. I just wanted to mention, I'm going to try to provide a citation to EPA's regulations. This is the charge of implementing the Clean Water Act. Misinterpretation of Section 401 does get deferred. And what EPA said in the permanent waiver is a decision not... It's not what... The next point I'd like to make is very briefly about the idea that the state process hasn't finished, and the concession my colleagues suggested to me is that they could get the same result. The reason the state process hasn't finished is that Maryland and Constellation left it, abandoned the process, and supported it. I would add that we don't concede anything of the sort. We think that if this process was followed properly, Maryland would have to reach a different result. And if it came to the same... If it concluded that all the things that it said are necessary to protect the Chesapeake Bay and the Susquehanna River are not necessary, I think we would have very strong arguments that... Well, first of all, we'd have to explain it to the public. I think this is very important. And second, I think we'd have some very strong arguments that it was acted arbitrarily. Could you weigh in on this remedy question for us? Pardon me? Could you say something about this remedy question? The Interior Department says that if we... I understand what you want. You want... You want us to vacate an order for issue license based on the 2018 conditions, right? Correct? Yes. Do you agree that if we just vacate and nothing else, that the protections for fish will revert to the interim license, which aren't even as protective as the settlement? I don't know. I do think that's a possibility. But I would... I guess I could give you a point on that. One is, there can't be a more fundamental violation of the Clean Water Act than doing something that the Clean Water Act expressly precludes or bids. And that's what happened here. So that's, I think, a very important point. The other thing to remember on disruption is this is a 50-year license to the dam. This is what's going to decide what happens to the Chester Bay and the Conewingo River for the next half century. And it's important to start getting it right. This... Neither the old license nor the settlement even come close to doing that. What's missing from what Maryland found necessary to protect the bay and the river and its certification are very large reductions in the dam's discharges of nutrients, over 6 million pounds a year, allowing millions more fish past the dam than do now. Paving by far more flow for the fish to survive below the dam and providing field passage so that the mussels population, which has been wiped out, can be restored and the mussels can start getting up and fluttering. How many years is it going to take to get to this point? If it's vacated, they've still got administrative processes and other things to go through. I just don't know how long it's going to be. There's going to be less by the time we get around to a new license. I mean, that's why, frankly, we think it would be more helpful to just issue the license with the certification in it. We also think that would be appropriate under the statute, but... But suppose, just suppose hypothetically we don't do that. You brought this case because you're seeking to protect the quality of the water and the fish and animals that live there, right? So if your only option, between two options, vacating the license or remanding without vacature, which do you pick in terms of your goals in this case? Vacature, because this is a 50-year... I see. So you think maybe even though there's short-term loss of protections because the company might return to the interim license, that in the long run, that's better for the quality of the Conowingo Lake and everything, right? That's right. The only way to get this license right is to start fixing it, and the only way to start fixing it is in a way that doesn't... As a matter of law, FERC issues these interim licenses. Does it have the ability to impose new conditions on an interim license or can it only carry forward what happened before? I believe FERC has authority to impose conditions beyond those in the license, beyond those in its own license to protect the water quality. Each annual license is a new license? Each annual license is a new license and it has federal powers. Does it impose these settlement terms on its interim license? Excuse me? Does it impose these same settlement terms as part of its interim license? I believe so. And just keep doing that for years? Well, I don't know about keeping them in that... Probably not for a few years. Thank you, counsel. Thank you to all counsel. We'll take this case under submission.
judges: Srinivasan, Millett, Tatel